# EXHIBIT A

No. 22-32

---

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔖𝔢𝔠𝔬𝔫𝔡 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

_____

DENISE LOHNN, EXECUTOR OF THE ESTATE OF JORGEN LOHNN, DECEASED,
*Plaintiff-Appellee,*

v.

INTERNATIONAL BUSINESS MACHINES CORP.,
*Defendant-Appellant.*

_____

On Appeal from the United States District Court for the
Southern District of New York
Case No. 21-cv-06379-LJL – Judge Lewis J. Liman

_____

## PLAINTIFF-APPELLEE'S OPPOSITION TO IBM'S EMERGENCY MOTION FOR ADMINISTRATIVE STAY AND STAY PENDING APPEAL

Shannon Liss-Riordan
Zachary Rubin
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800
sliss@llrlaw.com; zrubin@llrlaw.com

*Counsel for Plaintiff-Appellee*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Plaintiff-Appellee Denise Lohnn hereby makes the following

corporate disclosure statement pursuant to Fed. R. App. R. 26.1:

Plaintiff-Appellee is an individual and therefore has no parent

corporation or shareholders.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ......................................................... i

I.      INTRODUCTION ..........................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND...............................6

III.    JURISDICTION ...........................................................................................10

IV.     ARGUMENT ...............................................................................................11

        A.      An Administrative Stay is Not Warranted Here ...........................11

        B.      IBM is Not Entitled to a Stay Pending Appeal ...............................13

                1.      IBM's Appeal is Unlikely to Succeed on the Merits..............14

                        a.      IBM's Entire Appeal and Stay Request is
                                Based on IBM's Post Facto Attempt to Rewrite
                                the Terms of the Arbitration Agreement It
                                Drafted ...............................................................................14

                        b.      Plaintiff's Court Challenge Is Not a "Ruse" or
                                "Gambit" to Evade Confidentiality, and the
                                Right of Public Access Cannot Be Undone ...................20

                        c.      The FAA Does Not Immunize Judicial
                                Documents From the Right of Public Access.................22

                2.      IBM Will Not Suffer Irreparable Harm Absent a
                        Stay, and any Harm it Faces is Self-Inflicted..........................23

                3.      Plaintiff and other Interested Parties Will Suffer
                        Substantial Injury if a Stay Has Issued ....................................24

4.      The Public Has a Strong Interest in the Stay Being
        Denied ......................................................................................26

V.     CONCLUSION.............................................................................27

CERTIFICATE OF COMPLIANCE ....................................................29

CERTIFICATE OF SERVICE ..............................................................30

# TABLE OF AUTHORITIES

## Cases

*American Family Life Assurance Co. of New York v. Baker,*
    778 Fed. App'x 24 (2d Cir. 2019)............................................................3, 8

*American Tel. & Tel. Co v. Grady,*
    594 F.2d 594 (7th Cir. 1978).........................................................................25

*Ashcraft v. Louisiana Coca-Cola Co.,*
    1986 WL 14781 (E.D. La. Dec. 19, 1986) ...................................................25

*Brady v. Nat'l Football League,*
    638 F.3d 1004 (8th Cir. 2011)........................................................................12

*Cleantech Innovations, Inc. v. NASDAQ Stock Mkt., LLC.,*
    2011 WL 7138696 (S.D.N.Y. Dec. 30, 2011) .............................................23

*Conn. Dep't of Envtl. Prot. v. O.S.H.A.,*
    356 F.3d 226 (2d Cir. 2004)..........................................................................24

*Estate of Heiser v. Deutsche Bank Trust Co. Americas,*
    2012 WL 2865485 (S.D.N.Y. July 10, 2012).............................................26

*Gambale v. Deutsche Bank AG,*
    377 F.3d 133 (2d Cir. 2004)..........................................................................12

*Gelboim v. Bank of America Corp.,*
    574 U.S. 405 (2015) ......................................................................................10

*Green Tree Fin. Corp.-Alabama v. Randolph,*
    531 U.S. 79 (2000) ........................................................................................18

*Guyden v. Aetna, Inc.,*
    544 F.3d 376 (2d Cir. 2008)..........................................................................17

*Hassoun v. Searls*,
    976 F.3d 121 (2d Cir. 2020) ........................................................................12

*In re Baker*,
    2005 WL 2105802 (E.D.N.Y. Aug. 31, 2005) ............................................24

*Lugosch v. Pyramid Co. of Onondaga*,
    435 F.3d 110 (2d Cir. 2006) ................................................................passim

*Mohammed v. Reno*,
    309 F.3d 95 (2d. Cir. 2002) ........................................................................24

*Nken v. Holder*,
    556 U.S. 418 (2009) ....................................................................................13

*Office of Personnel Management v. American Federation of Government
    Employees*,
    473 U.S. 1301 (1985) ..................................................................................11

*Robert Bosch GmbH v. Honewell Intern. Inc.*,
    2015 WL 128154 (S.D.N.Y. Jan. 6, 2015) ..................................................16

*Romero v. Drummond Co., Inc.*,
    480 F.3d 1234 (11th Cir. 2007) ............................................................ 21, 22

*Sony Ericsson Mobile Communications AB v. Delta Electronics Public
    Company Ltd.*,
    2009 WL 959639 (S.D.N.Y. 2009) ..............................................................16

*Trump v. Vance*,
    2019 WL 5703884 (2d Cir. Oct. 7, 2019) ....................................................12

*Utica Mutual Insurance Company v. INA Reinsurance Company*,
    2012 WL 12874471 (N.D.N.Y. Nov. 6, 2012) .............................................24

*Utica Mutual Insurance Company v. INA Reinsurance Company*,
    2012 WL 13028279 (N.D.N.Y. June 12, 2012) ...........................................16

**Statutes**

28 U.S.C. § 1291...................................................................................4

Age Discrimination in Employment Act ("ADEA"),
    29 U.S.C. § 621 *et seq* ..................................................................2

## PLAINTIFF-APPELLEE'S OPPOSITION TO IBM'S EMERGENCY MOTION FOR ADMINISTRATIVE STAY AND STAY PENDING APPEAL

## I.    INTRODUCTION

It is axiomatic that courts must not allow motions to seal (or unseal) to linger on the docket for long. *See* Order at 15, D. Ct. Dkt. 42 (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006)). As this Court has observed, "Each passing day [that a document or information remains under] seal may constitute a separate and cognizable infringement of the First Amendment." *See id.* (quoting *Lugosch*, 435 F.3d at 126). With these principles in mind, the District Court, in a well-reasoned 42-page decision, rejected IBM's request for a "blanket order maintaining under seal documents and information in [the District Court] simply because it was conveyed in arbitrations that were subject to a confidentiality order." Order at 2, D. Ct. Dkt. 42.

IBM has now appealed the District Court's Order and asks this Court to enter a stay to prevent the purportedly confidential documents at issue in this case to remain under seal and redacted. If the Court does not stay

the Order, IBM contends, it will be the death of arbitral confidentiality as we know it. IBM's histrionic argument must be rejected. As will be explained, IBM bemoans problems of its own making, none of which trump the presumption of public access to the judicial documents at issue in this case.

Plaintiff-Appellee Denise Lohnn (hereinafter "Plaintiff"), the executor of the estate of her deceased husband, Jorgen Lohnn, brought this lawsuit in order to challenge two provisions of IBM's arbitration agreement, because they impede her ability to advance her late husband's age discrimination claim against IBM under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, in arbitration. On October 28, 2021, Plaintiff filed a motion for summary judgment seeking a declaratory judgment that those two provisions are unenforceable. The provision that is relevant to this appeal is a confidentiality provision, which prohibits IBM's former employees (of whom Plaintiff's counsel represents hundreds in arbitration) from sharing or disclosing any evidence or decisions obtained during their arbitrations. Plaintiff also submitted an

2

extensive evidentiary record consisting of evidence and rulings her counsel

obtained in other arbitrations demonstrating the ways in which IBM's

aggressive enforcement of its confidentiality provision unduly hindered

the abilities of IBM's former employees to pursue their ADEA claims in

arbitration. In so doing, Plaintiff followed the direction of this Court for

making such challenges, as set forth in *American Family Life Assurance Co. of*

*New York v. Baker*, 778 Fed. App'x 24, 27-28 (2d Cir. 2019).

Although IBM argued that the District Court should keep those

documents broadly under seal while it considered the merits of Plaintiff's

claim, the District Court disagreed. As this Court has explained, "[t]he

common law right of public access to judicial document is firmly rooted in

our nation's history," and "the need for federal courts . . . to have a

measure of accountability and for the public to have confidence in the

administration of justice." *Lugosch*, 435 F.3d at 119 (internal citations

omitted). Because IBM did not even attempt to articulate the harm that

would befall it if these documents were disclosed, the District Court

refused to keep the documents broadly under seal. *See* Order at 11-40, D. Ct. Dkt. 42.

At the outset, this Court should deny IBM's request for a stay because it does not have jurisdiction over IBM's appeal. As described in Plaintiff's Motion to Dismiss this appeal, which is being concurrently filed with this opposition, there is no final order that would trigger the Court's jurisdiction under 28 U.S.C. § 1291, and IBM does not meet the requirements of the collateral order doctrine. This Court could avoid even addressing this motion to stay by granting Plaintiff's Motion to Dismiss forthwith.[1]

However, regardless of whether this Court has jurisdiction over IBM's appeal, IBM's Motion for Stay should be rejected. Rather than addressing the important First Amendment concerns at issue head on, IBM

---

[1]     Given that IBM filed this motion as an emergency motion, and Plaintiff is responding to it even before the next business day, Plaintiff has proposed that IBM be given until Tuesday, January 11, 2022, to respond to the Motion to Dismiss and Plaintiff-Appellee be given until Wednesday, January 12, 2022, to reply.  That would allow time for expedited consideration of the Motion to Dismiss prior to January 14, 2022, when the first unsealing would begin, under the District Court's order.

attempts to distract the Court from the obvious applicability of *Lugosch* by engaging in *ad hominem* attacks against Plaintiff's counsel. IBM frames Plaintiff's argument regarding the presumption of public access as a "gambit" or a "ruse" intended to defeat confidentiality prior to the District Court's consideration of the merits. However, as the District Court correctly found, the documents in question are indeed judicial documents that enjoy the presumption of public access, which the Plaintiff was **required** to file to support her summary judgment motion under Second Circuit and Supreme Court precedent.

In truth, IBM regrets the fact that it drafted its arbitration agreement so as to delegate questions of validity or enforceability of its terms to a court (whose proceedings must be public). Nothing prevented IBM from delegating such a question to the arbitrator, and nothing about the District Court's Order would destroy arbitral confidentiality at large. As the District Court has already extensively analyzed and concluded, none of the factors that courts consider in deciding the propriety a stay favor IBM's position. *See* Order at 40-42, D. Ct. Dkt. 42. Staying the District Court's

Order will only serve to aggravate the First Amendment concerns set forth

in *Lugosch*.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff brought this lawsuit on July 27, 2021, seeking a declaratory

judgment that two provisions of an arbitration agreement that her

deceased husband entered into with IBM are not enforceable (a

confidentiality provision and a timeliness provision), as they undermine or

extinguish her ability to pursue her husband's claims against IBM under

the ADEA.  *See* D. Ct. Dkt. 1.[2]

As described in Plaintiff's Motion for Summary Judgment (D. Ct.

Dkt. 14) and the accompanying Statement of Material Facts (hereinafter

---

[2]      Other courts in the Southern District of New York are also deciding
the issues raised in this lawsuit. For example, twenty-six plaintiffs in the
consolidated matter *In Re: IBM Arbitration Agreement Litigation*, C.A. No. 21-
CV-6296 (JMF), also filed a motion for summary judgment before Judge
Jesse M. Furman raising these same issues (Dkt. 27). These issues are also
before Judge John G. Koeltl in *Chandler v. International Business Machines
Corp.*, C.A. No. 21-CV-6319-JGK, and *Lodi v. International Business Machines
Corp.*, C.A. No. 21-CV-6336-JGK, and before Chief Judge Colleen McMahon
in *Tavenner v. International Business Machines Corp.*, C.A. No. 21-CV-6345-
CM. Judge Furman also has approximately 50 additional plaintiffs before
him in *In Re: Second Wave IBM Arbitration Agreement Litigation*, 21-CV-9574-
JMF, which raises the confidentiality (but not the timeliness) issue.

"SOF") (D. Ct. Dkt. 15), after Mr. Lohnn was laid off by IBM, he entered

into an arbitration agreement with IBM that released (in exchange for a

small severance payment) almost all claims he may have had against IBM,

but not claims under the ADEA, which he was required to bring in

individual arbitration. (SOF ¶5, D. Ct. Dkt. 15.)

The confidentiality provision Plaintiff challenges requires that all

documents produced and arbitral rulings shall not be disclosed, except "as

may be necessary in connection with a court application for a preliminary

remedy, a judicial challenge to an award or its enforcement, or unless

otherwise required by law or judicial decision . . . ." (SOF ¶ 16, D. Ct. Dkt.

15.)

Plaintiff's counsel currently represents hundreds of individuals who

are pursuing or have pursued ADEA claims against IBM in individual

arbitration. (SOF ¶ 17, D. Ct. Dkt. 15.) In these arbitrations, Plaintiff's

counsel have obtained critical evidence demonstrating IBM's systematic

discriminatory conduct. (SOF ¶ 18, D. Ct. Dkt. 15.) IBM, however, has

aggressively used the confidentiality provision to block former employees

7

from using this evidence (as well as favorable arbitration decisions). (SOF
¶¶ 19, 21 D. Ct. Dkt. 15.)

Pursuant to a case management plan agreed to by the parties before
the District Court (D. Ct. Dkt. 12), Plaintiff submitted her motion for
summary judgment seeking a declaratory judgment on October 28, 2021
(D. Ct. Dkt. 14). Plaintiff argued that it the confidentiality provision is
unenforceable because IBM has wielded it to prevent its former employees
from utilizing a great deal of highly relevant, incriminating evidence
showing the extent of IBM's discriminatory conduct. *See American Family*,
778 Fed. App'x at 27-28.

Importantly, Plaintiff included an extensive documentary record to
support her motion for summary judgment. Plaintiff filed her motion for
summary judgment and all accompanying documents under seal (D. Ct.
Dkt. 14-16). Plaintiff then conferred with IBM and publicly filed heavily
redacted versions of the summary judgment papers publicly (with the vast
majority of documents still under seal, as IBM would not agree to their
public filing) (D. Ct. Dkt. 17-19).

The District Court, on December 14, 2021, ordered the parties to submit a joint letter "setting forth each party's position with respect to each redaction in any of the papers that have been filed under seal in redacted form, including the specific harm that would befall Defendant should the redacted information be made public." (D. Ct. Dkt. 35.) In that letter, IBM made no effort whatsoever to articulate the "specific harm" that would befall it if **__any__** of the redacted information be made public. (D. Ct. Dkt. 38, 38-1 to 38-7)

As a consequence of IBM's failure, the District Court issued its Memorandum and Order on January 4, 2021. (D. Ct. Dkt. 42.) The District Court rejected IBM's request to broadly keep these documents under seal.

Notably, the District Court also forcefully rejected IBM's request that any decision to unseal the purportedly confidential information be stayed pending an interlocutory appeal to this Court. (Order at 40-41, D. Ct. Dkt. 42.) The District Court explained that it "does not view this as a close case; Defendant has made few specific requests for confidentiality and has relied upon a blanket assertion of arbitral confidentiality that has consistently

9

rejected by the judges in this District." (Order at 41, D. Ct. Dkt. 42.)

IBM filed the instant appeal of the District Court's decision on January 7, 2022, and submitted its emergency motion for a stay that same day (Dkt. 8). Plaintiff has filed a Motion to Dismiss this appeal for lack of jurisdiction (Dkt. 12).

## III.   JURISDICTION

Contrary to IBM's assertion, this Court does not have jurisdiction to hear IBM's interlocutory appeal – as such Plaintiff is moving separately for the Court to dismiss IBM's appeal. IBM asserts that this Court has jurisdiction under 28 U.S.C. § 1291, which confers jurisdiction over appeals of final decisions. A "final decision is 'one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *See Gelboim v. Bank of America Corp.*, 574 U.S. 405, 409 (2015) (internal quotation omitted). The District Court's Order to unseal is not a final order.

IBM asserts that the Court nevertheless has jurisdiction pursuant to the collateral order doctrine. Plaintiff respectfully refers the Court to her Motion to Dismiss (Dkt. 12), in which she explains why the collateral order

doctrine does not confer jurisdiction here. Because the Court does not have jurisdiction over IBM's appeal, its motion for a stay should be denied.

## IV. ARGUMENT

### A. An Administrative Stay is Not Warranted Here

First, IBM asks that this Court immediately enter an administrative stay in order to provide a motions panel the opportunity to evaluate IBM's motion before the District Court unseals the documents at issue. IBM complains that, should a stay not be entered, the District Court will unseal the confidential documents, thus mooting the appeal and destroying the Court's jurisdiction. But as Plaintiff has explained in her Motion to Dismiss, this Court already lacks jurisdiction to hear IBM's appeal. *See Office of Personnel Management v. American Federation of Government Employees*, 473 U.S. 1301, 1306 (1985) (holding an administrative stay was improper where the court was without jurisdiction over the underlying appeal).

Moreover, as the District Court aptly observed, this Court has instructed that motions to seal (or unseal) should not linger on the docket for long, as the longer such a motion is pending, the greater the

infringement on the First Amendment. *See* Order at 15, D. Ct. Dkt. 42 (citing *Lugosch*, 435 F.3d at 126)). Given the fact that this Court does not even have jurisdiction over IBM's appeal, a stay that will lead to infringements of the public's First Amendment rights is completely unjustified. Indeed, "[t]he public cannot properly monitor the work of the courts with long delays in adjudication based on secret documents." *Id.* at 127.

As such, even IBM's request for an administrative stay pending the Court's consideration of this motion is improper and should be rejected.[3] At the very least, the Court should act as expeditiously as possible on

---

[3]     The cases that IBM cites in support of its request are distinguishable. For example, *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 138 (2d Cir. 2004), was not an interlocutory appeal, and thus there was no dispute as to whether this Court had jurisdiction to hear the appeal. Nor were *Hassoun v. Searls*, 976 F.3d 121, 126 (2d Cir. 2020), and *Trump v. Vance*, 2019 WL 5703884, at *1 (2d Cir. Oct. 7, 2019), as the district courts in those cases had already dismissed the complaints. IBM also cites *Brady v. Nat'l Football League*, 638 F.3d 1004, 1005 (8th Cir. 2011), but as Judge Bye noted in the dissent, the party seeking an administrative stay must show that it will suffer irreparable harm, *id.* at 1006. Here, there is no indication that irreparable harm will befall IBM absent an administrative stay, as this Court can simply decide IBM's motion (or grant Plaintiff-Appellee's Motion to Dismiss) prior to January 14, 2022, when the District Court may begin unsealing certain documents.

IBM's motion (as well as Plaintiff's Motion to Dismiss) to ensure that there is little delay to the unsealing of these documents.

**B.     IBM is Not Entitled to a Stay Pending Appeal**

IBM cannot come close to meeting its heavy burden to prove that an emergency stay is warranted.  "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433-434 (2009). Courts must consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434.

In seeking the extraordinary remedy of an emergency stay in this Court, IBM barely mentions that the District Court **already denied its request for a stay** pending appeal. *See* Order at 40-41 (D. Ct. Dkt. 42). Tellingly, IBM wholly ignores the aspects of the District Court's meticulously reasoned opinion where the Court explained the basis for its

13

denial – and in doing so, IBM has fallen woefully short of demonstrating any clear error committed by the District Court (of which there is none) in exercising its broad discretion to deny a requested stay. As the District Court aptly pointed out, this is not a "close case; Defendant has made few specific requests for confidentiality and has relied upon a blanket assertion of arbitral confidentiality that has been consistently rejected by the judges in this District." Order at 41, D. Ct. Dkt. 42.

1.  **IBM's Appeal is Unlikely to Succeed on the Merits**

    a.  **IBM's Entire Appeal and Stay Request is Based on IBM's Post Facto Attempt to Rewrite the Terms of the Arbitration Agreement It Drafted**

First, IBM argues that this Court's decision in *Lugosch* simply does not apply in the context of this case. Faced with the well-settled law in this Circuit regarding the presumption of public access to judicial documents, IBM makes the histrionic argument that the District Court's routine unsealing order would spell the death of confidentiality agreements in arbitration. However, IBM conveniently omits that everything that has happened in the District Court proceeding below, culminating in the

14

District Court's Order, **is consistent with the very terms of the arbitration agreement and confidentiality provision that IBM drafted.** As such, with this appeal, IBM is improperly asking this Court to save it from its own contract drafting and litigation conduct, which has led to a result that IBM does not like.[4]

IBM hyperbolically argues that, if the District Court's Order stands, it would allow any arbitration litigant to evade a confidentiality provision by filing a court action challenging that provision. But plainly, if a party wishes to avoid the risk of disclosure of information pursuant to the doctrine of public access to judicial documents, then that party could easily draft an arbitration agreement that delegates challenges to any of its

---

[4] IBM notes that Judge Furman did not view it appropriate to unseal the documents in question prior to the Court's consideration on the merits of Plaintiffs' challenge to IBM's arbitration confidentiality provision in *In Re: IBM Arbitration Agreement Litigation*. However, Judge Liman cogently explained his decision to depart from Judge Furman's decision:

> But that Judge simply deferred ruling; he did not accept Defendant's broad arguments. Nor does the record reflect he reviewed the actual redactions. And the Court does not view this as a close case . . . .

Order at 40-41, D. Ct. Dkt. 42.

15

provisions to the arbitrator, rather than the courts. IBM did not do so. By drafting its arbitration agreement to **require** any enforceability challenge to be brought in court, IBM "cannot have a legitimate expectation of privacy in all papers pertaining to the arbitration because the party should know of the presumption of public access to judicial proceedings." *Robert Bosch GmbH v. Honewell Intern. Inc.*, 2015 WL 128154, at *1 (S.D.N.Y. Jan. 6, 2015).

Indeed, by now, in drafting arbitration agreements, companies such as IBM that are represented by an army of able counsel should be aware of the well-established rule that a confidentiality provision will not overcome the presumption of public access to court proceedings. *See, e.g., Utica Mutual Insurance Company v. INA Reinsurance Company*, 2012 WL 13028279 (N.D.N.Y. June 12, 2012) ("The law grants a presumption of public access to judicial documents . . . and the confidentiality order in the arbitration does not entitle Utica to '... transfer the privileges of [its] private arbitration to a public judicial forum.'") (internal citations omitted); *Sony Ericsson Mobile Communications AB v. Delta Electronics Public Company Ltd.*, 2009 WL 959639 at *2 (S.D.N.Y. 2009) ("The fact that arbitral proceedings in this case may

16

have been confidential under the arbitral rules or the arbitration clause at issue does not necessitate that they be kept confidential in these proceedings.").

After requiring Plaintiff to file her challenge to the arbitration agreement in a public forum, IBM further consented to summary judgment briefing occurring prior to any motion to dismiss being filed. As the District Court put it, IBM cannot "unring that bell" by now claiming that the District Court may not consider documents filed in support of Plaintiff's summary judgment motion simply because a motion to dismiss is also pending. *See* Order at 32, D. Ct. Dkt. 42. Once IBM consented to Plaintiff filing her summary judgment motion prior to IBM's motion to dismiss, the summary judgment filings became—as a matter of law— judicial documents to which a presumption of public access attaches. *See Lugosch*, 435 F.3d at 121. Moreover, as the District Court correctly pointed out, the documentary record was necessary for Plaintiff to advance her summary judgment motion: "Under [*Guyden v. Aetna, Inc.*, 544 F.3d 376, 385 (2d Cir. 2008)] and [*Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S.

17

79 (2000)], Plaintiff must not simply make that assertion but must offer evidence to prove it." Order at 24 n.5, D. Ct. Dkt. 42.

Further, once Plaintiff brought her challenge in court as she was required by IBM's arbitration agreement to do, **there was no violation of IBM's confidentiality provision** when Plaintiff raised the issue of whether the summary judgment documents should be unsealed pursuant to the right of public access to judicial documents**.** As the District Court recognized, the confidentiality provision "permits public disclosure when necessary to confirm or challenge an award or when otherwise required by law or judicial decision." Order at 4-5, D. Ct. Dkt. 42. As such, it was completely consistent with the confidentiality provision for Plaintiff to raise the issue of whether, pursuant to the right of public access to judicial documents, it is "required by law" that the summary judgment documents be unsealed so that the public may have access. The District Court gave IBM numerous opportunities to make specific showings regarding how its "legitimate interests" overcame the presumption of access to judicial documents, yet IBM did not avail themselves of these opportunities. *See*

18

Order at 8-10, 30, D. Ct. Dkt. 42. The District Court's decision thus held that, in most instances, IBM had not demonstrated any "legitimate interests" that overcome the right of public access to judicial documents. *Id.*

As such, this case does not even present a violation of IBM's own confidentiality agreement, let alone some existential threat to all arbitral confidentiality agreements. IBM's *current desire* for complete arbitration confidentiality (to support its sharp practice in this litigation) cannot be mistaken for the actual confidentiality agreement that IBM drafted and required Plaintiff's husband to sign in order to receive a modest amount of separation pay (in return for also waiving most all claims other than ADEA claims).

In sum, it cannot possibly be the case that when a party's own poorly drafted arbitration agreement and litigation decisions result in an unsealing order the party does not like, that party can claim a faux "emergency" to a Circuit Court.

19

b.   **Plaintiff's Court Challenge Is Not a "Ruse" or
     "Gambit" to Evade Confidentiality, and the Right
     of Public Access Cannot Be Undone**

Second, IBM argues that *Lugosch* does not apply, because the District

Court should not consider the record that Plaintiff submitted to support

her summary judgment motion, and those documents are thus not "judicial

documents" that enjoy the presumption of public access. As the District

Court noted, IBM's conduct in this litigation belies this argument. IBM

itself agreed to proceed with Plaintiff's Motion for Summary Judgment

concurrently with IBM's Motion to Dismiss, and it cannot unring that bell.

*See* Order at 32, D. Ct. Dkt. 42.

IBM again accuses Plaintiff of bringing this entire proceeding as a

"ruse" or a "gambit" to evade confidentiality. Of course, a party is not

evading confidentiality where she has not actually contravened the

relevant confidentiality provision. Further, the District Court recognized

that the Supreme Court and Second Circuit have both held that a plaintiff

challenging such a clause on effective vindication grounds is required to

make an evidentiary "showing," to establish the claim rather than relying

20

on allegations alone. *Id.* at 22-23 (internal citations omitted). As such,

Plaintiff's attachment of confidential arbitration materials to her summary

judgment briefing was not only permissible **but required** by law for her to

make her challenge to IBM's confidentiality provision. Furthermore, as the

District Court stated, "there is nothing wrongful or 'ruse'-like about

Plaintiff attempting to make out her claim. That is what courts are for."

Order at 26, D. Ct. Dkt. 42. There is absolutely no basis for IBM's

inflammatory contention that Plaintiff or her counsel acted in bad faith.

Nevertheless, even where parties have acted in bad faith in seeking

unsealing (which Plaintiff has not), that contention is irrelevant to the right

of *public access*. By its very nature, that right belongs to the public by virtue

of the First Amendment and the common law. Indeed, in *Romero v.*

*Drummond Co., Inc.*, the Eleventh Circuit rejected that very contention,

overturning the district court's order sealing documents based on

allegations of plaintiff's counsel's bad faith. 480 F.3d 1234, 1247 (11th Cir.

2007). The Eleventh Circuit concluded that "[e]ven if the plaintiffs' lawyers

should have been punished, the sanction should not have been to close

21

judicial proceedings to the public." *Id.* (internal citation omitted). IBM's egregious contention that Plaintiff has acted in bad faith has not only already been rejected by the District Court, but even more importantly, has no bearing on the right of public access to judicial documents.

**c.     The FAA Does Not Immunize Judicial Documents From the Right of Public Access**

Next, IBM hyperbolically argues that the District Court's decision will somehow destroy the FAA's policy favoring confidentiality. This argument is a non-starter. As the District Court noted, courts in the Second Circuit have for decades held that arbitral confidentiality does not by itself "defeat the public's right to know when the same information is submitted in support of a request for dispositive judicial action." Order at 28-29, D. Ct. Dkt. 42 (collecting cases). And as a matter of common sense, it is odd indeed for IBM to take the position that the FAA somehow trumps rights grounded in the First Amendment of the United States Constitution.[5]

---

[5]     Confidentiality is not a necessary or inherent part of arbitration, and not all parties require arbitration to be confidential. The lengths that IBM has gone to try to keep these arbitrations confidential and separate from one another go beyond anything Plaintiff's counsel have ever seen.

22

### 2. IBM Will Not Suffer Irreparable Harm Absent a Stay, and any Harm it Faces is Self-Inflicted

IBM has "not identified, how, if at all, the disclosure of information . . . would compromise its interests in an arbitral forum." Order at 24, D. Ct. Dkt. 42. IBM does not even attempt to identify what "irreparable harm" it will suffer beyond the unsealing itself (which does not actually constitute irreparable harm). *See, e.g.*, *Cleantech Innovations, Inc. v. NASDAQ Stock Mkt., LLC.*, 2011 WL 7138696, at *5 (S.D.N.Y. Dec. 30, 2011) (noting that a party's "conclusory assertions" and failure to "identify the particular harm that would result" is insufficient).[6]

In the Second Circuit, "irreparable harm" does not constitute *any* unfavorable outcome. The term refers to *serious, actual* harm, such as "the violation of a constitutional right," *Conn. Dep't of Envtl. Prot. v. O.S.H.A.*,

---

Nevertheless, it is normal that once arbitration spills into court (not only when there are challenges such as this one, but also when award get confirmed or vacated), arbitral proceedings become public. *See* Order at 26-27, D. Ct. Dkt. 42 (collecting cases).

[6]     Further, as noted earlier, IBM could have avoided this scenario had it not delegated challenges of the validity or enforceability of the terms of the arbitration agreement to the courts.

356 F.3d 226, 231 (2d Cir. 2004), or the deportation of an immigrant,

*Mohammed v. Reno*, 309 F.3d 95, 102 (2d. Cir. 2002). Disclosure of

information protected by a confidentiality provision does not by itself rise

to the level of "irreparable harm." *See Utica Mutual Insurance Company v.*

*INA Reinsurance Company*, 2012 WL 12874471, at *5 (N.D.N.Y. Nov. 6, 2012).

Likewise, even if denial of a stay pending appeal would render the appeal

moot, that ***does not*** constitute "irreparable harm." *See In re Baker*, 2005 WL

2105802, *9 (E.D.N.Y. Aug. 31, 2005) (collecting cases).

### 3. Plaintiff and other Interested Parties Will Suffer Substantial Injury if a Stay Has Issued

Issuance of a stay would substantially injure not only Plaintiff but

also the other parties interested in the proceeding. Plaintiff contends that

her deceased husband was a victim of IBM's companywide scheme of age

discrimination that, as others have alleged, impacted thousands of other

former IBM employees. In addition to Plaintiff's own interest in being able

to use these documents in her own arbitration (should she be allowed to

pursue one), Plaintiff has a significant interest in seeing IBM rectify its

broader discriminatory practices and seeing justice served for others who

fell victim to the same illegal practice as did her husband and who are currently arbitrating age discrimination claims against IBM. If the stay is granted, by the time IBM's meritless appeal has been resolved, it will be too late for many of those litigants to benefit from the documents in question.[7] The presumption of public access operates "with all the more force" when it would "aid of collateral litigation on similar issues, for in addition to the abstract virtues of sunlight as a disinfectant, access in such cases materially eases the tasks of courts and litigants and speeds up what otherwise might be a lengthy process." *Ashcraft v. Louisiana Coca-Cola Co.*, 1986 WL 14781, at *1 (E.D. La. Dec. 19, 1986) (quoting *American Tel. & Tel. Co v. Grady*, 594 F.2d 594, 596 (7th Cir. 1978)).

---

[7]     Many employees who Plaintiff's counsel are representing in arbitration have requested stays of their arbitrations pending adjudication of the challenges to portions of IBM's arbitration agreement, including the confidentiality provision. This request has included a request in the consolidated case before Judge Furman, *In Re: Second Wave IBM Arbitration Agreement Litigation*, 21-CV-9574-JMF.  However, IBM vociferously challenged the stay request, which Judge Furman denied, and these arbitrations are proceeding.

### 4. The Public Has a Strong Interest in the Stay Being Denied

The public interest obviously lies with the *public right of access to judicial documents*. The District Court correctly held that:

> The public has a right of access to judicial documents under the common law and the First Amendment and that access trumps a blanket assertion of arbitral confidentiality. And that interest is immediate. The public interest thus favors disclosure rather than secrecy.

Order at 41, D. Ct. Dkt. 42 (citing *Lugosch*, 435 F.3d at 120).

Facilitating IBM's meritless appeal would also undermine the public interest in conserving judicial resources. *See Estate of Heiser v. Deutsche Bank Trust Co. Americas*, 2012 WL 2865485, at *5 (S.D.N.Y. July 10, 2012).

IBM weakly repeats its argument that the public interest favors a stay due to the FAA's policy of enforcing arbitration agreements according to their terms. However, as noted, IBM itself has taken the position that its arbitration agreement requires challenges to provisions in the agreement to be raised in court, where there is a presumption of public access. In addition, IBM's arbitration agreement itself states that arbitration proceedings will be confidential in order to protect trade secrets or other

26

sensitive information, and IBM has not identified any of these concerns that

would be impacted by unsealing the documents below; IBM's arbitration

agreement also provides that proceedings will not be confidential "as

required by law," which has now been determined to be required, through

the District Court's Order.

Moreover, countless courts have already found confidentiality

provisions in arbitration agreements *not* to outweigh the presumption of

public access to judicial documents.  *See* Order at 26-27, D. Ct. Dkt. 42

(collecting cases).

## V.     CONCLUSION

For the foregoing reasons, the Court should deny IBM's request to

stay the District Court's order to unseal and unredact Plaintiff's summary

judgment documents pending IBM's appeal.

Dated: January 10, 2022

Respectfully submitted,

Plaintiff-Appellee Denise Lohnn,
Executor of the Estate of Jorgen
Lohnn, Deceased,

By her attorneys,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan
Zachary Rubin
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800
sliss@llrlaw.com
zrubin@llrlaw.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Palatino Linotype font.

This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), it contains 5,188 words, as determined by the word-count function of Microsoft Word 2016.

Dated: January 10, 2022

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 10, 2022, an electronic copy of the foregoing was filed with the Clerk of the United States Court of Appeals for the Second Circuit using the appellate CM/ECF system.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished on them via the appellate CM/ECF system.


Dated: January 10, 2022

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan
